COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

CIVIL ACTION NO. 2020-82

SILVIA JULIANA FORERO MUÑOZ, )
individually and on behalf of all others )
similarly situated, )
                                )
      Plaintiff, )
                                 )
      v. )
                                   )
AU PAIR CARE, INC., INTRAX, INC. dba )
AUPAIRCARE, MARCIE SCHNEIDER and )
DOES 1-10, )
                                   )
      Defendants. )

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JAN 09 2020

CLERK

## CLASS ACTION COMPLAINT

Plaintiff Silvia Juliana Forero Muñoz ("Muñoz") on behalf of herself and all other

similarly situated *au pairs* bring this action against Au Pair Care, Inc., Intrax, Inc. dba

AuPairCare (together "Au Pair Care"), Marcie Schneider, and such other of Au Pair Care's

Treasurer and other officers having management of the company (all together "APC" or

"Defendants") for unpaid wages.

### Introduction

APC is one of only a handful of companies designated by the U.S. Department of State to

place foreign "*au pairs*" with host families in the United States. APC advertises to, recruits,

screens, trains, places, supervises and oversees *au pairs* during their stay and work performed in

host families' homes in the United States. APC obtains substantial fees from prospective *au*

*pairs*, contracts with them, and arranges for their placement with the host families. Once

selected and matched with a host family, APC coordinates and dictates the details of the *au pairs'* transportation to the United States, requires *au pairs* to attend training with APC prior to sending the *au pairs* to the host families, places various requirements on the *au pairs* and the host families regarding the accommodation for, payment to and work performed by the *au pairs*, and continues to oversee the *au pairs'* work and requires various contacts and attendance at events during the yearlong employment.  During the *au pair's* stay, APC maintains control over the *au pair's* placement and can remove, relocate or instruct an *au pair* to return to his/her home country.

On April 1, 2015, the Massachusetts Domestic Worker's Bill of Rights, Mass. Gen. L. c 149, § 190 ("MDWBR") went into effect, providing various protections for domestic workers, including *au pairs*.  APC's competitor and peer au pair sponsor agency, Cultural Care, Inc., challenged the implementation of the MDWBR, arguing that the requirements that *au pairs* be protected by the Massachusetts Wage Act were preempted by the federal *au pair* program (the "MDWBR Litigation").  On August 1, 2017, the United States District Court for the District of Massachusetts dismissed the MDWBR Litigation, ruling that the minimum wage, overtime and other employment protections for *au pairs* were not preempted by the federal *au pair* program. That decision was affirmed by the First Circuit in December 2019.  In 2014, APC and other *au pair* agencies were named in, and later settled, a class action lawsuit brought on behalf of a nationwide class of *au pairs*, in the Colorado District Court, ultimately agreed to pay millions of dollars to *au pairs* who alleged that they were entitled to, but not paid, minimum wage and overtime pursuant to the Federal Fair Labor Standards Act ("FLSA").

Despite knowing for years that *au pairs* in Massachusetts were required to be paid Massachusetts wages, APC repeatedly told *au pairs* they were only entitled to be paid, and host

families they were only required to pay, the minimum federal stipend of $195.75 per week.  APC never paid its *au pairs* the required Massachusetts wages.  Defendants were at all times the *au pairs'* employer and Defendants are responsible for the *au pairs'* unpaid wages.

## PARTIES

1.      Plaintiff Muñoz is an individual *au pair* who at all relevant times resided with a host family in Massachusetts.

2.      Defendant Au Pair Care, Inc. is, on information and belief, a California corporation with its principal place of business in San Francisco, California.

3.      Defendant Intrax, Inc. is on information and belief, a corporate entity with a principal place of business in San Francisco, California.  On information and belief, Au Pair Care, Inc. and Intrax, Inc. are affiliates, subsidiaries and/or alter egos of one another.  Defendants engaged in their au pair program in Massachusetts under the names Au Pair Care and Intrax interchangeably.

4.      On information and belief, Defendant Marcia Schneider is APC's President.

5.      Defendant Does 1 – 10 are APC's treasurer and other officers with management of the company and liable for unpaid wages pursuant to M.G.L. c. 149, §148, whose names have not yet been identified.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendants pursuant to M.G.L. Ch. 223A, § 2 and 3, because they generally transact business in the Commonwealth, and because the acts complained of herein occurred in the Commonwealth.

7.      Venue is proper in this county, pursuant to M.G.L. Ch. 223 § 1.

## FACTUAL ALLEGATIONS

8.      APC is one of only fifteen J-1 visa *au pair* program sponsors designated by the U.S. Department of State to recruit, train, place and supervise au pairs for fees charged to host families in the United States.

9.      As an approved sponsor organization, APC is permitted to recruit foreign nationals between the ages of 18 – 26, to be placed with host families in the United States as *au pairs*.

10.     APC advertises extensively to prospective foreign *au pairs*, promising an opportunity to travel to and within the United States and earn money while staying with a host family.

11.     APC charges prospective *au pairs* substantial fees to apply and participate in the program.

12.     APC accepts and reviews applications, and interviews, selects, and advises prospective *au pairs* on the program, including the requirements, responsibilities, and compensation.

13.     APC then advertises the *au pair* program to prospective host families.

14.     Once an *au pair* is matched with a host family, APC works with the *au pair* to direct and assist them in their visa applications and travel arrangements.

15.     When *au pairs* first arrive in the United States, they attend APC's mandatory training and orientation program.

16.     APC then visits and inspects the host family's home and accommodations for the *au pair*, meets with the host family and the *au pair* and supervises the placement.

17.     During the *au pair's* stay, APC continues to supervise and direct the *au pair*

through APC's local "community counselors." APC requires *au pairs* to check in with APC's employees, attend certain events, and adhere to APC's requirements.

18.     If any issues arise between an *au pair* and the host family, or if an *au pair* has personal issues, homesickness, physical illness, or family matters in their home country, APC consults with the *au pair* and, if necessary, relocates or facilitates the return home of the *au pair*.

19.     Through its contracts with the *au pairs* and host families, APC retains the ability remove an *au pair* from the host family.

20.     APC routinely informed *au pairs* that the most they may be paid is a $195.75 weekly stipend.

21.     The *au pairs* were told that they may not demand additional pay from their host families.

22.     APC contracts with host families to participate in the *au pair* program and host a APC *au pair*.

23.     APC advertises to and informs host families that they can obtain up to 45 hours per week of childcare at a rate substantially less than Massachusetts minimum wage.

24.     In fact, one of the primary selling points and reasons for the popularity of APC's *au pair* program is the advertised cost of hosting an *au pair*, which APC informs families is $195.75 per week.

25.     For example, APC's materials and website advertised the specific financial requirements for *au pairs*, including the following:

| Traditional Payment Schedule | | Family Friendly Payment Plan Schedule |
|---|---|---|
| **Payment Type** | **Amount** | **When It's Due** |
| Application Fee (non-refundable) | $50 | When you apply |
| Placement Fee (non-refundable) | $250 | When you match with your au pair |
| Program Fee* | $8,675 | $1,000 upon matching and remaining balance of $7,675 paid 30 days prior to your au pair's arrival |
| Minimum Au Pair Stipend** | $195.75/week | Paid weekly to your au pair |
| **Average Annual Cost: $18,958** | | |

*Program fee does not include minimum au pair stipend or other charges such as the SEVIS fee ($35) and Academy Travel Service, which are due 30 days prior to your au pair's arrival date. The Infant Specialized and Toddler Care program fees are $9,625. The minimum au pair stipend, educational reimbursement, and other options are subject to change based on updates to federal au pair regulations. Should any change occur, AuPairCare will notify all impacted parties.

** The U.S. Department of State calculation of the minimum weekly stipend is based on the federal minimum wage with a 40% deduction for room and board in exchange for childcare services. Host families and au pairs are free to agree to compensation higher than the legally applicable minimum.

26.     In 2014, Massachusetts passed the MDWBR.  That law covered various types of workers, including individuals who are "paid by an employer to perform work of a domestic nature within a household including…nanny services…"

27.     The MDWBR provides that *au pairs* are entitled to various protections, including time off and recordkeeping requirements.  Moreover, the MDWBR provides that *au pairs* are entitled to overtime pay, limits the deductions for food and lodging, and counts certain "on duty" hours as working time.

28.     At all relevant times, APC knew that the MDWBR was in effect.

29.     After its passage, APC's peer sponsor agency, Cultural Care, Inc., brought the MDWBR Litigation, seeking to enjoin the enforcement of the law and a declaration that the law was preempted by the Federal *au pair* program.

30.     On August 1, 2017, the Massachusetts District Court dismissed the MDWBR Litigation, ruling that the minimum wage, overtime and other employment protections for *au pairs* were not preempted by the federal *au pair* program.

31.     The Plaintiffs appealed and, on December 2, 2019, the First Circuit Court of Appeals upheld the trial court's ruling that the federal *au pair* program never preempted the Massachusetts law.  See *Cultural Care, Inc. v. Massachusetts Attorney General*, No. 17-2140 (1st Cir.).

32.     On November 13, 2014, a few months after the passage of the MDWBR, APC and the other *au pair* sponsor agencies were named as defendants in a nationwide class action suit brought on behalf of a class of *au pairs* for unpaid wages.  See *Beltran v. Interexchange, Inc. et al.,* Civ. No. 14-03074-CMA-KMIT (D.Colo.) (the "Colorado Au Pair Action").

33.     In the Colorado Au Pair Action, the *au pairs* alleged that APC and the other agencies limited *au pairs'* compensation to the minimum federal *au pair* program stipend of $195.75 per week, and routinely deprived *au pairs* of federal and state minimum wages.

34.     On or about January 9, 2019, APC and the other defendants to the Colorado Au Pair Action entered into a settlement, including the payment by APC and the other *au pair* agencies, totaling $65 million.

35.     The Colorado District Court entered final approval of the class settlement on August 1, 2019.

36.     The Colorado Au Pair Action included a class of individuals who were *au pairs* through October 28, 2018.

37.     APC has known of the potential impact of the FLSA, Massachusetts wage laws and the MDWBR, for years while it actively sought to thwart their enforcement.

38.     At all relevant times, APC knew that unless the law was overturned or deemed to be preempted, the Au Pairs were covered by the Massachusetts Wage Act.

39.     At all relevant times, the Plaintiff worked for APC as an *au pair* in Massachusetts.

40.     Nonetheless, despite the effect of the 2014 MDWBR and the 2014 Colorado Au

Pair Action, Defendants knowingly continued to misrepresent the amounts owed to *au pairs* in

Massachusetts and continued to refuse to pay *au pairs* their full Massachusetts wages.

41.     As the Massachusetts Attorney General recently stated:

> On December 2, 2019, a federal appeals court affirmed the dismissal of a lawsuit
> filed by Cultural Care Au Pair. **This court decision confirmed what the Attorney
> General's Office told Cultural Care in 2015: au pairs are domestic workers
> protected by the Massachusetts minimum wage, overtime, and Domestic
> Worker Bill of Rights (DWBOR) laws.**
> The Attorney General's Office understands that host families and au pairs may be
> learning about these legal obligations for the first time. The Attorney General's
> Office is focused on ensuring that Cultural Care and other au pair agencies bring
> their programs promptly into compliance with Massachusetts law. We also believe
> that the agencies must implement a solution for the increased costs and regulatory
> obligations facing host families with au pairs. In order to provide time for that to
> happen, the Attorney General's Office does not intend to enforce the DWBOR or
> other wage and hour laws against host families at this time, **although our office
> does not have control over private litigation.**

Massachusetts Attorney General, Domestic Workers Website (https://www.mass.gov/service-

details/domestic-workers) (emphasis added).

42.     Massachusetts representatives who passed the MDWBR similarly echoed the

Attorney General, noting that the law intentionally did not exempt *au pairs*, and that the

responsibility falls squarely on the shoulders of the agencies, including APC.  For example,

Senator Brownsberger issued a press release on December 18, 2019, explaining the genesis of

the MDWBR and stating in part:

> The Massachusetts Domestic Workers bill of rights responded to very real abuses.
> At the time the bill was under discussion and debate, we considered exempting au
> pair arrangements but concluded that by so doing we would be creating a significant
> loophole that would defeat the purposes of the bill. The bill was passed by a
> unanimous final roll call in the Senate and by a final roll call of 126 to 22 in the
> House.
> **To the extent that some families have been surprised by the ruling, the fault
> lies with agencies who may have placed au pairs under the old rules and failed
> to inform families that the new rules were likely to come into force when**

8

**litigation ended.** The legislation was enacted on June 26, 2014 and a full transition period was allowed. We made it effective April 1, 2015.

Will Brownsberger Press Release, December 18, 2019 (https://willbrownsberger.com/au-pair-ruling/) (emphasis added).

43.     Similarly, in response to concerns from host families, Massachusetts representative Kenneth Gordon advised:

> It is very unfortunate that it appears the company with which you did business did not inform you that since 2014 Massachusetts has considered au pairs to be domestic workers entitled to be paid a minimum wage (subject to an offset for room and board). The companies that bring these workers to our country were well aware of this, but in meetings with several families from our district, I realize they did not share this information and this has come as a surprise to the families. It is misleading to tell the families that the legislature ever believed that an au pair should not be considered a domestic worker under the protections of the law. The inclusion of au pairs in the 2014 legislation (or more specifically the decision not to exclude au pairs) came up specifically during the hearing process before we passed the bill. The company [Cultural Care, Inc.] that provides au pair opportunities to Commonwealth families tried to amend the bill when it came to the floor but they were unsuccessful. They later tried to file an amendment to the state budget that would have this same effect, but it was withdrawn. They tried to create an exemption through regulation, but it was refused. Finally, the company filed suit in federal court and lost. Most recently, that decision was upheld by the First Circuit and that is why you and other families are writing me now. I do not think it is fair to force current au pairs to continue to work for less than minimum wage after the company has had five years to work this out….

44.     Defendants knew for years the Plaintiff and Class were entitled to Massachusetts wages.

45.     The Plaintiff, like the other members of the Class, was not paid the full amount of her Massachusetts wages.

## CLASS ALLEGATIONS

46.     Plaintiff brings this complaint individually, and on behalf of a class of former or current *au pairs* who were employed by APC to participate in the *au pair* program in

Massachusetts.

47.     Plaintiff is a member of the Class.

48.     Numerosity: The members of the Class are so numerous that individual joinder of all Class members is impracticable.  On information and belief, the Class consists of approximately 500 *au pairs*.  The precise number of Class members and their addresses may be readily ascertained from APC's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

49.     Commonality: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  Common questions of law and fact, include, but are not limited to, whether Defendants are the *au pairs'* employer and whether the *au pairs* are entitled to Massachusetts wages.

50.     Typicality: Plaintiff's claims are typical of the claims of the Class because she and the other members of the Class were engaged in the same APC program and engaged in the same type of *au pair* placement in Massachusetts.

51.     Adequacy of Representation: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; she have retained counsel competent and experienced in class action litigation; and she intends to prosecute this action vigorously.

52.     Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and

expense that would be required to individually litigate their claims, so it would be impracticable

for the Class members to individually seek redress for Defendants' wrongful conduct.  Even if

the Class members could afford individual litigation, the court system could not.  Individualized

litigation creates a potential for inconsistent or contradictory judgments, and increases the delay

and expense to all parties and the court system.  By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court.

**COUNT I**
**Massachusetts Wage Act**

53.    Plaintiff realleges all of the foregoing.

54.    The wage and overtime provisions set forth in Massachusetts Wage Law,

including M.G.L. ch. 149 § 148 and ch. 151, § 1A, apply to APC and protect the Class.

55.    APC failed to pay Plaintiff and members of the Class wages and overtime wages

to which they are entitled.

56.    As a result of APC's violations of Massachusetts Wage Law, Plaintiff and the

members of the Class have suffered damages, including by being denied wages and overtime

wages in accordance with Massachusetts Wage Law in amounts to be determined at trial, and

they are entitled to recovery of such amounts, treble damages, prejudgment interest, attorneys'

fees, costs, and other compensation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court:

    a.   Certify the Class;

    b.   Award members of the Class damages to be determined at trial, including, but not

        limited to treble damages under Massachusetts Wage Law, together with

11

attorneys' fees and costs (as provided for under the Massachusetts Wage Law)

and pre-judgment and post-judgment interest; and

c.   Grant such other relief as the court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


SILVIA JULIANA FORERO MUÑOZ,
individually and on behalf of all others similarly
situated,

By her attorneys,

_____

Nicholas J. Rosenberg (BBO No. 657887)
Josh Gardner (BBO No. 657347)
GARDNER & ROSENBERG P.C.
One State Street, Fourth Floor
Boston, MA 02109
Tel: 617-390-7570
nick@gardnerrosenberg.com